Amy M. Samberg, #20-179
amy.samberg@clydeco.us
CLYDE & CO US LLP
One North Central Avenue, Suite 1030
Phoenix, AZ 85004
Telephone: (480) 746-4580
Facsimile: (480) 746-4556

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RICHMOND NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SAN PABLO, LLC, CONSUELO MESA DE BELTRAN and LINDA VASQUEZ,<br><br>Defendants. | Civil No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION** |

Richmond National Insurance Company ("RNIC"), by and through its undersigned attorneys, brings this action against American San Pablo, LLC ("San Pablo"), Consuelo Mesa De Beltran, and Linda Vasquez for a declaratory judgment pursuant to 28 U.S.C. §§ 1332, 2201, and 2202, in support thereof, alleges as follows:

## NATURE OF THE ACTION

1.      RNIC brings this action for (1) a declaratory judgment confirming rescission of an insurance policy issued by RNIC to San Pablo such that RNIC owes San Pablo no coverage obligation in connection with a lawsuit entitled *Vanessa Cogdill, as Personal Representative of the Estate of Paula Cogdill, decedent, v. American San Pablo, LLC, d/b/a American San Pablo Assisted Living; Consuelo Mesa De Beltran, Linda Vasquez, and Mary Doe*, presently pending in

1

the Second Judicial District Court, County of Bernalillo, New Mexico as Case Number D-202-CV-2025-07695 (the "Cogdill Action") and/or (2) a declaratory judgment that the insurance policy issued by RNIC to San Pablo is void such that that RNIC owes San Pablo no coverage obligation in connection with the Cogdill Action.

2.  RNIC issued Allied Healthcare Professional and General Liability Coverage Policy Number RN-7-0328624 to San Pablo for the Policy Period of 12/31/2024 to 12/31/2025 (the "RNIC Policy"). A true and correct copy of the RNIC Policy is attached hereto and incorporated by this reference as Exhibit A.

3.  The Complaint for Wrongful Death filed in the Cogdill Action ("Cogdill Complaint") alleges causes of action arising out of the death of Paula Cogdill for (1) Negligence (against Defendants Vasquez, Doe, and staff of Defendant San Pablo), (2) Loss of Chance of Better Outcome (against Defendants Vasquez and Doe), (3) Negligence (against Defendant Beltran); (4) Loss of Chance of Better Outcome (against defendant Beltran); (5) Negligence (against Defendant San Pablo); (6) Loss of Chance of a Better Outcome (against defendant San Pablo); (7) Violation of Laws, Statutes and Regulations (against Defendants Beltran and San Pablo); (8) Violation of Laws, Statutes and Regulations – Loss of Chance (against Defendants Beltran and San Pablo); (9) Piercing the Corporate Veil – Declaratory Relief (against Defendant Beltran); and (10) Arbitration Clause is Invalid (all Defendants). A true and correct copy of the Cogdill Summons and Complaint is attached hereto as Exhibit B.

4.  At all relevant times, Defendant San Pablo was in the business of providing assisted living and hospice services to residents of its facilities, including the facility housing decedent Paula Cogdill.

5. RNIC is informed and believes and thereon alleges that Defendant Consuelo Mesa de Beltran (Beltran) was the organizer, member, owner, and manager of Defendant San Pablo.

6. RNIC is informed and believes and thereon alleges that Defendant Linda Vasquez was an employee of Defendant San Pablo on December 28 and 29, 2024, and was responsible for resident care, checking on the residents' well-being and calling for an ambulance, when necessary.

7. RNIC seeks a declaration and order of rescission of the RNIC Policy on the basis that the application, warranties, and representations submitted by the Named Insured, and most specifically a "No Known Loss Letter" signed by Defendant Beltran on July 28, 2025 (the "NKLL"), are materially false and misleading such that rescission after expiration of a 15 day notice period as of November 27, 2025 is warranted and no coverage is owed by RNIC under the RNIC Policy for the Cogdill Action. A true and correct copy of the NKLL is attached hereto and incorporated by this reference as Exhibit C.

8. In the alternative, RNIC seeks a declaration that RNIC owes no coverage for the Cogdill Action to Defendants San Pablo, Consuelo Mesa De Beltran, Linda Vasquez, or any other employees of San Pablo under the RNIC Policy because the misrepresentations made to RNIC by Defendant Beltran on behalf of San Pablo in the NKLL were in violation of Section III. General Conditions, Subsection I. Warranties and Representations, subsection 1.(c), pursuant to which the Policy is voidable and should be declared void *ab initio*.

## JURISDICTION AND VENUE

9. Jurisdiction and venue are proper in this Court.

10. RNIC is a New Hampshire corporation with its principal offices in Glen Allen, Virginia.

11.     Defendant San Pablo is a New Mexico Limited Liability Company doing business in New Mexico. Upon information and belief, based on public records, the sole member and manager of San Pablo is Defendant Consuelo Mesa de Beltran.

12.     RNIC is informed and believes and hereon alleges that Defendants Beltran and Vasquez are residents and citizens of New Mexico doing business in New Mexico at all times relevant to the events at issue.

13.     Complete diversity of citizenship exists between the Parties herein.

14.     The alleged incident involving Paula Cogdill occurred in a San Pablo facility in New Mexico. [Ex. B, pp. 5-6, ¶¶11-18.]

15.     An actual, justiciable controversy exists between RNIC and Defendants with regard to RNIC's rights, duties and obligations, if any, under the RNIC Policy with regard to the Cogdill Action as set forth below.

16.     The amount in controversy exceeds the jurisdictional minimum of this Court, as the applicable RNIC policy limits at issue total $1,000,000 per Claim.

## THE RNIC POLICY

17.     RNIC issued the RNIC Policy, Allied Healthcare Professional and General Liability Coverage Policy number RN-7-0328624, to San Pablo for the policy period of April 1, 2023 through April 1, 2024. [Ex. A, p. 1.]

18.     The second paragraph of the Declarations Page of the RNIC Policy states, in part, immediately above Item 1 that: "In consideration of the payment of the Premium, and in reliance on all the statements made and the information contained in the Application(s) and all materials submitted in support of the Application(s) and subject to all the terms and conditions of this Policy,

Richmond National Insurance Company agrees with the first Named Insured to provide the insurance as stated in this Policy." [Ex. A, p. 1.]

19. The Declarations Page of the RNIC Policy states, in part, that the RNIC Policy provides a $1,000,000 per Claim and $2,000,000 Aggregate Limit of Liability subject to a $5,000 per claim deductible. [Ex. A, p. 1.]

20. The Declarations Page of the RNIC Policy further states, in part, immediately above the signature block that: "This Declarations Page, together with the completed and signed Application(s) including all materials, attachments and exhibits thereto, and the Policy and any endorsements shall constitute the contract between the first Named Insured and Richmond National Insurance Company." [Ex. A, p. 2.]

21. Both the Allied Healthcare General Liability Coverage – Claims Made and Reported (form RNAH GL 001 0124) and the Allied Healthcare Professional Liability Coverage – Claims Made and Reported (form RNAH PL 002 0124) forms state, in part, immediately above Section I. Insuring Agreement and Defense and Settlement that: "In consideration of the premium paid, in reliance on the statements and materials provided with the **application**, and subject to the provisions of this Policy, we agree to the following: …."  [Ex. A, pp. 8 & 26.]

22. Section III. General Conditions, Subsection I. Warranties and Representations, of both the Allied Healthcare General Liability Coverage – Claims Made and Reported (form RNAH GL 001 0124) and the Allied Healthcare Professional Liability Coverage – Claims Made and Reported (form RNAH PL 002 0124) coverage sections of the RNIC Policy state, in part:

>   1. By accepting this Policy, you and all other Insureds agree:
>       a. The statements in the **Declarations** are accurate and complete; and

5

  b. That the representations in the **application** are: (1) all true, accurate and complete; (2) material to the acceptance of the risk by us; (3) considered as fully incorporated into and constituting a part of this Policy; and (4) are the basis of this Policy, and this Policy is issued in reliance upon the truth of all of those representations; and

  c. No knowledge or information possessed by any **Insured** shall be imputed to any other **Insured**, except for material facts or information known to the person or persons who signed the application. In the event of any material untruth, misrepresentation, or omission in connection with any of the particulars or statements in the application, this Policy shall be voidable with respect to any **Insured** who knew of such untruth, misrepresentation, or omission or to whom such knowledge is imputed.

[Ex. A, pp. 12 & 29.]

23. Section III. General Conditions, Subsection L. First Named Insured as Sole Representative, of both the Allied Healthcare General Liability Coverage – Claims Made and Reported (form RNAH GL 001 0124) and the Allied Healthcare Professional Liability Coverage – Claims Made and Reported (form RNAH PL 002 0124) coverage sections of the RNIC Policy state, in part:

  1. The **first Named Insured** shall act on behalf of all **Insureds** regarding completing the application for this insurance, including representing the truth and completeness of all information as required in III. GENERAL CONDITIONS, C. Duties in the Event of a **Claim** and III. GENERAL CONDITIONS, D. Notice of Potential **Claims**, giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, agreeing to any changes in this Policy, and electing whether or not to purchase the Optional Extended Reporting Period described in III. GENERAL CONDITIONS, X. Further, **the first Named Insured** shall be responsible for payment for all Deductible or Self-Insured Retention obligations for all **claims** under this Policy.

[Ex. A, pp. 12 & 30.]

24. The term "application" as used in the RNIC Policy is defined in Section V. Definitions, paragraph D to mean:

1. The application(s) submitted to us for procuring this Policy, including any material and information submitted with the application by you or on your behalf; and
2. The application(s), including any material submitted to us for procuring all prior policies issued by us providing continuous coverage until the inception date of this Policy, including any material and information submitted with those applications by you or on your behalf.

[Ex. A, pp. 20 & 36.]

## FACTUAL BACKGROUND

25. RNIC is informed and believes and on that basis alleges that on August 3, 2024, Paula Cogdill became a resident of San Pablo. [Ex. B, p. 5, ¶ 11.]

26. On November 8, 2024, Beltran as "owner/adm." of San Pablo signed a "Huntersure LLC Professional and General Liability Application for Assisted Living Facilities & Adult Group Homes" on behalf of "Applicant" American San Pablo, LLC. (hereinafter the "November Application"). A true and correct copy of the November Application is attached hereto and incorporated by this reference as Exhibit D.

27. On November 20, 2024, Will Valentine of Ryan Turner Specialty ("RT") submitted on behalf of San Pablo the November Application and supporting materials to RNIC. That same day RNIC acknowledged receipt of the submission.

28. On December 12, 2024, Adriana Johnson of RT emailed RNIC to advise that they desired to add a new location to the submission, American Winds of Grace LLC.

29. On December 19, 2024, RNIC provided RT with a quote for San Pablo.

30. On December 23, 2024, Beltran as "Owner/Administrator" electronically signed a second Huntersure LLC Professional and General Liability Application for Assisted Living

Facilities & Adult Group Homes" on behalf of "Applicant" American San Pablo, LLC. (hereinafter the "December Application"). A true and correct copy of the December Application is attached hereto and incorporated by this reference as Exhibit E.

    31.    That same day, Beltran signed a "No Known or Reported Loss Statement" stating:

> I hereby certify that I am an undersigned authorized officer and am authorized to make the following statements on behalf of the Named Insured/Applicant in the schedule above and all other Named Insureds/Applicants covered by, or to be covered by, the policy applied for regarding claims, lawsuits and incidents that could result in claims or lawsuits covered or potentially covered by a Hamilton policy of insurance.
>
> On behalf of the Named Insured/Applicant above and all other Named Insureds/Applicants covered by, or to be covered by, the policy applied for, I hereby certify that, with the exception of the claims and lawsuits (if any) listed below, or previously expressly disclosed to us in previous applications for insurance:
>
> - I am not aware of any covered, potentially covered, or uncovered claim or lawsuit alleging damages arising out of a wrongful act, an accident that occurred, or an offense that was committed from in the past 5 years.
>
> - I am not aware of any other circumstance, incident or condition that has occurred that has not yet resulted in a claim or lawsuit, but which could reasonably be expected to result in a claim or lawsuit.
>
> ….
>
> **Notice: Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance, or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any material fact, commits a fraudulent insurance act, which is a crime and may also be subject to civil penalty.**

A true and correct copy of the No Known or Reported Loss Statement is attached as Exhibit F.

32. RNIC is informed and believes and on that basis alleges that late at night on December 28 or early morning December 29, 2024, Paula Cogdill was found to have half her face drooping and her tongue hanging out, e.g. signs of a stroke. The San Pablo personnel were unable to reach the family. But no ambulance was called until after 6:30 a.m., at least six hours after she was found to be exhibiting signs of a stroke. The ambulance arrived at 6:55 but she was unresponsive. [Ex. B, p. 6, ¶ 14.]

33. On December 30, 2024, RT emailed RNIC and requested that RNIC bind/issue coverage for American San Pablo effective 12/31/2024.

34. On December 31, 2024, RNIC emailed RT, in pertinent part, that:

> Thanks for the Order! Please note coverage is not bound yet. … Please submit the following before EOB 1/3/2024 [sic], subject to review: - Copy of state license and state inspection, complaint, POC and any other state reports for the past 36 months (FOR BOTH LOCATIONS). Required prior to binding.

35. On January 2, 2025, RNIC emailed a Binder letter for San Pablo to RT with an Annual Premium of $20,730 and Company Fee of $250 (combined $20,980). That same day, AFCO Insurance Premium Finance ("AFCO") issued a "Confirmation of Financed Policy" to RNIC and The Millward Agency Inc. confirming that San Pablo had entered into a premium finance agreement for the payment of the $20,730.00 premium for the RNIC Policy.

36. RNIC is informed and believes and on that basis alleges that on January 4, 2025, Paula Cogdill died. [Ex. B, p. 6, ¶ 18.]

37. On January 27, 2025, a copy of the RNIC Policy was emailed to RT.

38. On April 25, 2025, the 2nd Judicial District Court for the State of New Mexico, County of Bernalillo, issues an Order appointing Vanessa Rae Cogdill as the Personal

Representative of the Estate of Paula Cogdill "**for the purposes of bringing a wrongful death claim**" (the "Order"). A true and correct copy of the Order is attached hereto as Exhibit G.

39. On May 16, 2025, AFCO issued a Notice of Cancellation of the Insurance Premium Finance Agreement to RNIC and RT stating, in part, that San Pablo's premium finance agreement was in "default," the effective date of cancellation is 05/21/2025, and that:

> AFCO has sent notice of intent to cancel the policy as required by applicable law. AFCO directs you to cancel the above policy and return the gross unearned premiums directly to AFCO at the address shown above within the time required by law. The insured has granted AFCO a power of attorney to request cancellation of the policy and has assigned all unearned premiums to it.
>
> Cancellation is to be effective on the date shown above at the time of day provided for in the policy or by law, or as soon thereafter as statutory, regulatory, or contractual requirements permit.

40. On May 21, 2025, the cancellation of the RNIC Policy for San Pablo's non-payment to the premium finance company and resulting non-payment of premium became effective.

41. On May 23, 2025, Counsel for the Cogdill Estate (Duhigg & Berlin, P.A.) sends San Pablo a letter seeking release of medical information which asks for all medical records and itemized billing statements. An attachment to the letter is the Order dated 04/25/2025 appointing Vanessa Rae Cogdill as the Personal Representative of the Estate of Paula Cogdill "for the purposes of bringing a wrongful death claim". A true and correct copy of the May 23, 2025 letter and attachment are attached hereto as Exhibit H.

42. On June 6, 2025, RNIC emailed RT a cancellation endorsement for the RT Policy.

43. On July 14, 2025, RT advised RNIC that "the insured has resolved the payment issue with AFCO. Can you confirm that they have been in contact and requested a reinstatement?"

44. On July 16, 2025, RNIC responded to RT that "we have not received a NOR request from the premium finance company."

45. On July 24, 2025, RT emailed RNIC to follow up on the reinstatement request. That same day counsel for the Cogdill Estate send a "Second Request" to San Pablo Senior Living again seeking release of medical information. A true and correct copy of the July 24, 2025 "Second Request" is attached hereto as Exhibit I.

46. On July 25, 2025, Broker Billing of RNIC reported to RNIC underwriting that it had received the NOR request from the premium finance company, and that: "The Insured made their account current on 07/14/2025. Do you approve reinstatement of the Policy?" RNIC responds in an email to RT, in part, that: "Just received confirmation! Can you please get us a NKLL for the lapsed period before end of day Monday?"

47. On July 28, 2025, Beltran signed the NKLL which misrepresented that:

> As of the date of this letter, we are not aware of any loss, suit or claim that has not been disclosed in writing to the Company, nor of any fact, circumstance or situation which may reasonably be expected to result in a loss under this policy, or give rise to a claim being made against us, or any other entity for which coverage is being requested, for dates of 5/1/2024 – present."

[Ex. C.]

48. On July 28, 2025, Jessica Stone, Vice President of Products Liability and Allied Health at RNIC emailed Ashlee Randall, RNIC's SVP and Chief Underwriting Officer, stating:

> Passing along the below reinstatement request as the backdate reinstatement with NKLL [no known loss letter] closed on 6/21/25 (cancellation effective 5/21/25). PFC sent reinstatement on 7/14/25 and it was received/processed by us on 7/25.
>
> I feel it has been too long and they will need to re-write with a gap, but I am referring along because it's a $20k account (not huge, but not MP) and I didn't want to close the door on it without asking.

11

49. Ms. Randall responded that same day: "I'm okay if we can get a NKLL [no known loss letter]." Ms. Stone then informed RNIC underwriting: "OK to reinstate on this one per below, since we have a NKLL [no known loss letter] for the gap."

50. On July 29, 2025, RNIC issues a Notice of Policy Reinstatement for the RNIC Policy.

51. On September 4, 2025, the Cogdill Action was filed in the Second Judicial District Court, County of Bernalillo. [Ex. B.]

52. On September 22, 2025, Beltran transmits notice of the Cogdill Claim to RNIC via email.

53. On September 23, 2025, RNIC acknowledges receipt of the Cogdill Claim and requests information regarding the matter.

54. On September 25, 2025, Beltran emails RNIC, in part:

> I received a subpoena in April or May, I believe, but couldn't get the faxes to go through to their office for a few weeks (I forwarded the email to their lawyer from my gmail that explained all the issues getting a hold of them). I'm not sure if I have any verification of what day we first received it. Is that something you can get from the other lawyer? They have the document from when it was served.
>
> I had already responded when I received a second subpoena ….

**COUNT I – DECLARATORY JUDGMENT**
**(Order Declaring That RNIC Has Properly Rescinded The RNIC Policy And Owes Defendants No Coverage Obligation for the Cogdill Action)**

55. Paragraphs 1 through 55 are incorporated by reference as if set forth herein in their entirety.

56. Defendants San Pablo and Beltran seek insurance coverage under the RNIC Policy for the Cogdill Action.

57. RNIC contends that rescission of the RNIC Policy is warranted based on Beltran's misrepresentations in the July 28, 2025 No Known Loss Letter that as of the date of the letter "we are not aware of any loss, suit or claim that has not been disclosed in writing to the Company, nor of any fact, circumstance or situation which may reasonably be expected to result in a loss under this policy, or give rise to a claim being made against us, or any other entity for which coverage is being requested, for dates of 5/1/2024 – present."

58. RNIC has by explanatory letter dated November 12, 2025 and a check delivered that same day, and hereby again, tenders the premium it received for the RNIC Policy to San Pablo in the amount of $20,980.00, comprising premium of $20,730 and policy fees of $250.00.

59. RNIC contends that rescission of the RNIC Policy is proper after a 15 day notice period expiring November 27, 2025, and RNIC owes no obligation to provide coverage to Defendants for the Cogdill Action.

60. RNIC is informed and believes that Defendants dispute RNIC's position.

61. Accordingly, an actual controversy exists between RNIC regarding rescission of the RNIC Policy and coverage for the Cogdill Action.

62. A declaratory judgment is necessary to determine the rights and obligations of the parties, if any, under the RNIC Policies as to this issue.

## COUNT II – DECLARATORY JUDGMENT
**(Order Declaring The RNIC Policy Is Void And That RNIC Owes Defendants No Coverage Obligation for the Cogdill Action)**

63. Paragraphs 1 through 63 are incorporated by reference as if set forth herein in their entirety.

64. Defendants San Pablo and Beltran seek insurance coverage under the RNIC Policy for the Cogdill Action.

65. RNIC contends that pursuant to Section III. General Conditions, Subsection I. Warranties and Representations, of both the Allied Healthcare General Liability Coverage – Claims Made and Reported (form RNAH GL 001 0124) and the Allied Healthcare Professional Liability Coverage – Claims Made and Reported (form RNAH PL 002 0124) the RNIC Policy is "voidable with respect to any Insured who knew of such untruth, misrepresentation, or omission or to whom such knowledge is imputed."

66. Beltran signed the No Known Loss Letter and Beltran's knowledge of the misrepresentations in the July 28, 2025 No Known Loss Letter is imputed to all Defendants.

67. RNIC has on November 12, 2025, and hereby again tenders the premium it received for the RNIC Policy to San Pablo in the amount of in the amount of $20,980.00, comprising premium of $20,730.00 and policy fees of $250.00.

68. RNIC contends that the RNIC Policy is void *ab initio* and it owes no obligation to provide coverage to Defendants for the Cogdill Action.

69. RNIC is informed and believes that Defendants dispute RNIC's position.

70. Accordingly, an actual controversy exists between RNIC regarding the voiding of the RNIC Policy and coverage for the Cogdill Action.

71. A declaratory judgment is necessary to determine the rights and obligations of the parties, if any, under the RNIC Policies as to this issue.

## JURY DEMAND

Richmond National Insurance Company hereby demands a trial by jury in this action.

## PRAYER

WHEREFORE, RNIC respectfully requests this Court enter judgment in its favor and against Defendants as follows:

      A.      Declaring that RNIC has properly rescinded the RNIC Policy and owes Defendants no coverage obligation to defend or indemnify them or any other San Pablo employees in connection with the Cogdill Action;

      B.      The RNIC Policy is void and that RNIC owes Defendants no coverage obligation for defense or indemnification of them or any other San Pablo employees in connection with the Cogdill Action;

      C.      For costs of suit; and

      D.      For such other and further relief that this Honorable Court deems just and proper.

Dated: November 12, 2025.

                                              CLYDE & CO US LLP

                                              */s/ Amy M. Samberg*
                                              Amy M. Samberg, #20-179
                                              One North Central Ave., Suite 1030
                                              Phoenix, AZ 85004
                                              Telephone: (480) 746-4580
                                              Facsimile: (480) 746-4556
                                              Amy.Samberg@clydeco.us
                                              *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2025, I electronically transmitted the foregoing document to the following CM/ECF registrants:

By: */s/ Lupe Alabado*